**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **EDMUND COLLINS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:06cv309** |
| | ) | |
| **DONALD RUMSFELD** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>ORDER</u>

The matter is before the Court on defendant's motion to dismiss and for summary

judgment.  Plaintiff, Edmund Collins, appearing *pro se*,[1] alleges that his former employer, the

Department of Defense Commissary Agency ("DeCA"), discriminated against him based on his

age and race and retaliated against him for participating in prior Equal Employment Opportunity

("EEO") activity.  Defendant, Donald Rumsfeld, has (i) moved to dismiss Collins's claim of

retaliation under the ADEA because the United States has not waived its sovereign immunity

with respect to such claims and (ii) moved for summary judgment on all of Collins's claims,

arguing both that Collins cannot establish a *prima facie* case of disparate treatment or retaliation

and that, even assuming Collins has stated a *prima facie* case, defendant had legitimate, non-

---

[1]Collins's complaint was initially filed, by and through Florida counsel, in the Southern
District of Florida.  Thereafter, the matter was transferred to the Eastern District of Virginia and
Collins's Florida attorney filed a motion to withdraw as counsel because he is not admitted to
practice in Virginia.  By Order dated July 20, 2006, the motion to withdraw was denied and
counsel was permitted to proceed *pro hac vice* upon submitting the proper forms and fees.
Collins's counsel has not made any submission to appear *pro hac vice* and has not filed any
response to defendant's motion to dismiss and for summary judgment.  Accordingly, for
purposes of this Order, Collins is considered a *pro se* plaintiff.

discriminatory reasons for its actions.  Collins was given the opportunity to file responsive

materials, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and did not do so.

Thereafter, by Order dated September 8, 2006, Collins was given an additional thirty (30) days to

file counter-affidavits or other responsive materials, after which defendant's potentially

dispositive motion would be decided on the existing record.  To date, Collins has not filed any

responsive material.  Accordingly, this matter is now ripe for disposition.

## I.[2]

Collins, a fifty-three year old African-American, was employed as the Store Manager for

the DeCA Commissary in Orote, Guam (the "Orote Commissary").  The Orote Commissary, like

hundreds of other commissaries around the world, is administered and operated by DeCA.

In August 2001, Bruce Graf, the Zone Manager for commissaries in the Pacific, sent a

Request for Personnel Action seeking an Assistant Commissary Officer, GS-11,[3] to DeCA's

Human Resources Operations Division ("HROD"), which, along with DeCA's Commissary

Career Program Office ("CCP"), oversees personnel and administrative services.  As is routinely

done, HROD searched its personnel database for all qualified registrants interested in the

---

[2]The facts recited herein are derived from the existing record as a whole, pursuant to Rule 56, Fed. R. Civ. P., and are undisputed.  To the extent any facts alleged in Collins's complaint and defendant's motion are in dispute, the dispute is noted and, if material, the facts are construed favorably to Collins, as required.  *See Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[3]"GS" or "general schedule" refers to the personnel classification system covered in Title 5, U.S.C.  The numerical designator, GS-1 to GS-15, indicates the pay grade and corresponding level of responsibility for the position.

vacancy's geographic location.[4]  HROD then rated the twenty qualified candidates and placed

them on the "referral list."  At the top of the list was Blaise Grondin, with a score of 128.  Collins

ranked sixth in the list of twenty, receiving a score of 116.

Paul Hubbard, the Commissary Officer in charge of the Orote Commissary, and Graf,

Hubbard's direct supervisor, screened the referral list and reviewed the candidates' career briefs.

Hubbard and Graf then whittled the referral list down to the three most qualified candidates,

Emile Hurd, Herminio Mallari, and Blaise Grondin, and evaluated these three candidates based

on their work history, training, education, awards, and performance ratings.  Ultimately, Grondin

was selected for the position.

On September 19, 2001, HROD informed Hubbard that DeCA regulations prevented

Grondin's employment with the Orote Commissary.  Specifically, DeCA regulations do not

permit a GS-9 employee, like Grondin, from being promoted to a GS-11 position if the

commissary employs a GS-10 employee.  At the time, Collins was employed by the Orote

Commissary as a GS-10 employee; thus, HROD informed Hubbard that Grondin could not be

selected for the position.

After conferring with Graf, Hubbard contacted HROD to explore alternative hiring

options.  HROD personnel explained to Hubbard that he could downgrade the position to GS-10,

generate a new referral list, and then, if the referral list included Grondin, Grondin could be

hired.  Pursuant to HROD's advice, Hubbard and Graf proceeded with this option.  As it had

done for the initial selection, HROD searched the personnel database for qualified candidates

---

[4]DeCA employees who wish to be considered for a commissary vacancy must register
with and submit certain required information to the CCP.  The CCP maintains an inventory of
these records and employees are responsible for submitting updates to their personnel files.

seeking a GS-10 position.  Fourteen candidates were placed on the referral list, including

Grondin.  Collins was not placed on the referral list because the information included in the

personnel database indicated that Collins was only interested in GS-11 vacancies.  After

reviewing the new referral list, Hubbard again selected Grondin for the position.

Thereafter, Collins filed a formal complaint with the Equal Employment Opportunity

Commission ("EEOC") alleging that he was not selected for the position because of race,

disability, and age discrimination and/or in retaliation for participating in prior EEO activity.  On

May 20, 2005, the EEOC issued a Final Agency Decision in favor of DeCA after finding that the

record did not contain any evidence of discrimination.

On August 18, 2005, Collins instituted this civil action alleging that he was not selected

for the Assistant Commissary Officer position because of age and race discrimination and in

retaliation for participating in prior EEO activity.  On August 11, 2006, defendant moved to

dismiss and for summary judgment on Collins's discrimination and retaliation claims, arguing

that Collins cannot establish a *prima facie* case of disparate treatment or retaliation and that, even

assuming Collins has stated a *prima facie* case, defendant had legitimate, non-discriminatory

reasons for its actions.

**II.**

The summary judgment standard is well-established.  Under Rule 56(c), Fed. R. Civ. P.,

summary judgment is appropriate where, on the basis of undisputed material facts, the moving

party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986).  Importantly, to defeat summary judgment the non-moving party may not rest upon a

"mere scintilla" of evidence, but must set forth specific facts showing a genuine issue for trial.

*Id.* at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## III.

### A.

To begin with, Collins claims he was the victim of age and race discrimination when Grondin, a forty-three year old Caucasian, was selected for the Assistant Commissary Officer position instead of him, a fifty-three year old African-American.  Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2002e *et seq*., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, prohibit employers from failing or refusing to hire, or otherwise discriminating against, an individual based on their race or age.

To defeat summary judgment in a disparate treatment case under Title VII or the ADEA, Collins must establish a *prima facie* case of prohibited discrimination.  *See McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973).  This can be accomplished either by providing direct evidence of discrimination or through the inferential proof scheme set forth in *McDonnell-Douglas*.  *Id.* at 802.

Where, as here, the plaintiff has provided no direct evidence of discrimination, review properly proceeds under the *McDonnell-Douglas* framework.  Under *McDonnell-Douglas*, Collins must establish a *prima facie* case of discrimination "by proving a set of facts which would enable the fact-finder to conclude, in the absence of any further explanation, that it is more likely than not that the adverse employment action was the product of discrimination." *Ennis v. National Assoc. Of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995).  More specifically, where, as here, a plaintiff alleges he was subjected to disparate treatment in the context of a failure to select or promote plaintiff, he must prove that (i) he is a member of a protect group; (ii)

5

he applied for the position in question; (iii) he was qualified for the position; and (iv) he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. *Carter v. Bull*, 33 F.3d 450, 458 (4th Cir. 1994). If Collins succeeds in establishing a *prima facie* case of discrimination, the burden of production then shifts to defendant to articulate a legitimate, non-discriminatory reason for rejecting Collins in favor of Grondin. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). If defendant does so, the burden shifts back to Collins to show that there is a triable issue of fact concerning whether the proffered reason is pretextual. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2005) (explaining that once the defendant meets his burden of production, the burden shifts back to the plaintiff to show that defendant's proffered reason is a pretext for intentional retaliation).

These principles, applied to the existing record, compel the conclusion that Collins was not subjected to unlawful discrimination. Because Collins never responded to defendant's motion for summary judgment the record contains no evidence of discrimination. In fact, the only allegation of discrimination is contained in the complaint's one sentence contention that the "promotion was undertaken in favor of Grondin and against Collins based upon his age and race." Collins has not provided a scintilla of evidence to support his contention and give rise to an inference of unlawful age or race discrimination, and Collins's mere, unsworn assertion, without more, that age and race were motivating factors in the hiring decision does not have sufficient "probative force to reflect a genuine issue of material fact." *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988) (dismissing plaintiff's discrimination because "[c]onclusory assertions that [an employer's] state of mind and motivation are in dispute are not

enough to withstand summary judgment").

Moreover, even assuming that Collins had presented evidence of discrimination sufficient to establish a *prima facie* case of disparate treatment, summary judgment is appropriate because the record includes legitimate non-discriminatory reasons for hiring Gromin, *see Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996) (recognizing that "[j]ob performance and relative employee qualifications are "widely recognized as valid, non-discriminatory bases for any adverse employment decision"). These proffered reasons remain unrebutted and nothing in the record suggests that the reasons are pretextual. Accordingly, summary judgment is appropriate.

## B.

Additionally, Collins claims he was subjected to unlawful retaliation when he was not selected for the Assistant Commissary Officer position. Like Collins's claim of disparate treatment, his retaliation claim is subject to the *McDonnell-Douglas* burden-shifting regime. *See Laughlin v. Metro. Washington Airport Auth.*, 149 F.3d 253, 258 (4th Cir. 1998). Thus, to state a *prima facie* case of retaliation Collins must establish that "he engaged in a protected activity, that the [defendant] took an adverse action against him, and that a causal relationship existed between his protected activity and the [defendant's] adverse action." *Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006). If he establishes a *prima facie* case of retaliation, the burden shifts to defendant to proffer a nonretaliatory reason for its action. *Id.* If defendant does so, the burden shifts back to Collins to show that there is a triable issue of fact concerning whether the proffered reason is pretextual under *Reeves*, 530 U.S. 133. *Id.*

Collins claims that he was subjected to unlawful retaliation when, in August 2001, he was not selected for the Assistant Commissary Officer position because, in 1996, he supported a coworker's EEO complaint.  To begin with, Collins has not established a causal relationship between his participation in his coworker's EEO complaint and his non-selection.  Indeed, Collins's complaint merely states "Defendant retaliated against Plaintiff for prior participation in a discrimination investigation."  This bare allegation is not sufficient to establish a causal nexus. Likewise, the mere fact that Hubbard knew that Collins engaged in EEO activity in 1996 is not sufficient to establish a causal nexus between the EEO activity and Collins's non-selection in 2001.  *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (holding that a twenty month period between EEO activity and adverse employment action suggested, "by itself, no causality at all" because to show a causal connection the "temporal proximity between . . . knowledge of protected activity and an adverse . . . action . . . must be 'very close'").  As with Collins's disparate treatment claim, Collins's mere assertion, without more, that his non-selection was due to unlawful retaliation does not have sufficient "probative force to reflect a genuine issue of material fact."  *Goldberg*, 836 F.2d at 848.

Moreover, as with Collins's disparate treatment claim, even assuming that Collins stated a *prima facie* case of retaliation, summary judgment is appropriate because the record includes unrebutted, legitimate non-discriminatory reasons for Collins's non-selection.  *See Evans*, 80 F.3d at 960.  Accordingly, summary judgment is appropriate.

For the foregoing reasons, and for good cause,

It is hereby **ORDERED** that defendant's motion for summary judgment on Collins's

8

claims of discrimination and retaliation is **GRANTED**.

It is further **ORDERED** that defendant's motion to dismiss is **DENIED AS MOOT**.

As this resolves all outstanding issues in this case, the Clerk is **DIRECTED** to place this matter among the ended causes.

Should plaintiff wish to **appeal** this Order, he must do so within sixty (60) days, pursuant to Rules 3 and 4, Fed. R. App. P.

The Clerk is directed to send a copy of this Order to plaintiff and all counsel of record.


_____/s/_____

Alexandria, Virginia                                    T. S. Ellis, III
October 17, 2006                                        United States District Judge

9